Gregory B. Collins (#023154)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com

*Attorneys for ThermoLife International, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MusclePharm Corporation, a Nevada corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff ThermoLife International, LLC ("Plaintiff" or "ThermoLife") alleges the following as its Complaint against Defendant MusclePharm Corporation ("MusclePharm"):

## NATURE OF THE CASE

1. Plaintiff ThermoLife is a world leader in the use and development of nitrate technology in Dietary Supplements. One of the primary benefits of nitrate supplementation is vasodilation. Vasodilation is marketed as a method that can increase muscle hyperemia and blood flow to the muscle during exercise, a.k.a. "The Pump", which may assist in the muscle building process. Because of this effect, vasodilators are included in nearly every pre-workout product on the market. Pre-workout products are meant to be taken just prior

1   to a workout in order to increase energy, stamina, strength, and pump (via vasodilation) during the workout. Hundreds of millions of dollars in pre-workout products are sold in the United States annually, almost all of which include ingredients that claim to be vasodilators.

2.  ThermoLife holds at least 16 patents with more than 450 claims related to novel uses of amino acid nitrate compounds, compositions, and their uses in Dietary Supplements and food products. Many of these patents protect the use of ThermoLife's patented compounds, compositions, and methods to increase vasodilation.

3.  Defendant MusclePharm competes with ThermoLife and products sourced from ThermoLife in the Dietary Supplement market and, more specifically, in the pre-workout category of Dietary Supplements.

4.  MusclePharm sells a product named Wreckage, which it claims "is an elite pre-workout formula designed for our most experienced and seasoned athletes."

5.  In support of its claim of "elite" status, MusclePharm states, "At the MusclePharm™ Sports Science Institute, our team fine-tuned precise inclusions of the safest, most clinically-studied and cutting-edge ingredients to enhance training performance and maximize playmaking ability."

6.  MusclePharm also claims Wreckage creates "Advanced vascularity and pump with Vaso6™[.]"

7.  MusclePharm also produces and sells the product Combat Pre-Workout, another product that includes VASO6. MusclePharm claims Combat Pre-Workout "[m]aximizes muscle pump."

8.  MusclePharm also marks the labels of both its Wreckage and Combat Pre-Workout products with two patent numbers (U.S. Patent No 6,706,756 ("the '756 Patent") and U.S. Patent No. 7,132,446B1 ("the '446 Patent")). According to MusclePharm, these products practice these patents as a result of the inclusion of VASO6 in the products. In reality though, neither of these products, nor VASO6, practices any claim in either of these

patents, both of which are listed on each and every bottle of the Wreckage and Combat Pre-Workout products.

9. In addition to falsely patent marking its products in regards to VASO6, MusclePharm's advertising regarding its products and VASO6 is also blatantly false. Contrary to MusclePharm's advertising, VASO6 is neither "clinically-studied" nor "cutting-edge" and it certainly does not create "[a]dvanced vascularity and pump" or "[m]aximizes muscle pump" as advertised by MusclePharm.

10. In fact, independent testing on the VASO6 raw material revealed that VASO6 is just a common green tea extract; it does not include the isolated compounds, or an effective amount of any compound necessary to practice any of the patents marked on MusclePharm's product labels.

11. MusclePharm's advertising statements are provably false and MusclePharm is fully aware that its advertising statements are false. In fact, the entire marketing scheme for VASO6 is based on lies. Contrary to what is claimed, VASO6 is not patented, not clinically tested, and it certainly has not been shown to provide "maximum pump." MusclePharm's continued false marketing and false patent marking of VASO6 misleads consumers and creates a market for products that contain this ingredient, where none should exist. In direct competition with ThermoLife's patented ingredients and technologies, as well as, pre-workout products that license ThermoLife's nitrates and technologies, MusclePharm relies on lies to market its products and steal business from ThermoLife. Without this intentional false advertising, no one would ever buy products that include VASO6 as a marquee ingredient, which is, for all intents and purposes, nothing more than a common green tea extract, which provides no benefits that VASO6 falsely claims to provide. MusclePharm's ill-gotten gains must be disgorged.

12. MusclePharm also lists a trademark on its labels that includes VASO6. The federally registered trademark for VASO6 indicates that the products include grape seed extract, but the products actually include green tea extract.

13. Because MuslcePharm's false advertising claims all appear on the label of its products, MusclePharm's products are misbranded, and by law, MusclePharm's products are not permitted for sale in interstate commerce. MusclePharm's intentional false patent marking of these products on the products' labels causes the products to be "misbranded" under 21 U.S.C. § 343(a)(1) in that "the labeling is false and misleading in any particular." Misbranded and adulterated products cannot be sold in interstate commerce under U.S.C. 21 § 331(a).

14. ThermoLife brings claims for false advertising under 25 U.S.C. § 1125(d), false patent marking under 35 U.S.C. § 292, and unfair competition against its competitor MusclePharm. In competition with ThermoLife, MusclePharm is willfully and intentionally misleading consumers into purchasing its falsely advertised, falsely marked, and misbranded products. MusclePharm's ill-gotten profits must be disgorged.

## PARTIES, JURISDICTION AND VENUE

15. Plaintiff ThermoLife is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

16. Defendant MusclePharm Corporation is a Nevada corporation.

17. MusclePharm markets and distributes Dietary Supplements throughout the United States, including in Arizona. Its interactive website offers for sale and sells the product at issue to Arizona customers and it ships products to such customers.

18. MusclePharm falsely advertises to Arizona customers and unfairly competes with ThermoLife in the state.

19. Personal jurisdiction exists under Arizona's long-arm statute.

20. The Court has jurisdiction over Plaintiff's federal claims under 15 U.S.C. § 1121 and 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's state law claims based on 28 U.S.C. § 1367.

21. Venue is proper in this district under 28 U.S.C. § 1391(b)-(c), because a substantial part of the events or omissions giving rise to ThermoLife's claims occurred in this district.

22. Venue with respect to MusclePharm is also proper in this district because MusclePharm is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

## THERMOLIFE

23. Ron Kramer ("Kramer") founded ThermoLife in 1998. Prior to founding ThermoLife, Kramer opened and operated a Gold's Gym in Santa Cruz, California.

24. In 1998, Kramer founded ThermoLife in order to provide the public with quality proven supplements.

25. ThermoLife currently holds 23 separate and distinct patents that protect its innovative development and use of ingredients in Dietary Supplements and food products.

26. ThermoLife holds at least 16 patents with more than 450 claims related to amino acid nitrate compounds, compositions, and uses in Dietary Supplements and food products.

27. For example, ThermoLife's U.S. Patent No. 8,178,572 protects and covers "a method for increasing the vasodilative characteristics of amino acids in a human, the method comprising administering orally to the human a pharmaceutically effective amount of an amino acid compound consisting essentially of a nitrate of an amino acid selected from the group consisting of Arginine, Agmatine, Beta Alanine, Citrulline, Creatine, Glutamine, L-Histidine, Isoleucine, Leucine, Norvaline, Ornithine, and Valine."

28. With few exceptions, any time an amino acid is combined with nitrate(s) and sold and marketed to consumers in a Dietary Supplement, that product relies on ThermoLife's patented technology.

29. ThermoLife's patented creatine nitrate has proven exceedingly popular in the Dietary Supplement market.

30. Creatine is sold in many forms and for decades has been used to promote muscle mass in individuals. Creatine nitrate is a new form of creatine where the creatine molecule is ionically bound to a nitrate ion. Among its other benefits, the bonding of the

creatine with the nitrate increases the solubility of the compound, which is beneficial for use in Dietary Supplements.

31. ThermoLife licenses and sells its patented creatine nitrate for use in Dietary Supplement products.

32. Sourced and licensed from ThermoLife, creatine nitrate and other amino acid nitrates supplied by ThermoLife are included in many of the top-selling Dietary Supplements in the world.

33. These ingredients are sought after by consumers of Dietary Supplements looking to gain muscle and increase athletic performance or improve physical appearance. The "Sports Nutrition" category of Dietary Supplements caters to this subset of Dietary Supplement consumers.

34. As just one example, ThermoLife's creatine nitrate is the marquee ingredient in the world's top-selling pre-workout product: Cellucor's C4.

35. As a result of the popularity of ThermoLife's nitrates in the Dietary Supplement market, ThermoLife's business is tied to the performance of products that rely on ThermoLife's patented ingredients and technologies.

36. ThermoLife is harmed when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from ThermoLife and/or technology that is licensed from ThermoLife.

37. ThermoLife has an identifiable economic interest in the Dietary Supplement market, including the Sports Nutrition segment.

### MUSCLEPHARM

38. MusclePharm sells and advertises Dietary Supplements over the internet, through its own website and websites of online retailers whose business is marketing and selling Dietary Supplements in the Sports Nutrition Market. MusclePharm competes directly with ThermoLife and the licensees of ThermoLife's patented ingredients and technology in the Dietary Supplement market and, more specifically, the pre-workout category of Dietary Supplements.

39. The MusclePharm website homepage has the following statement: "MUSCLEPHARM® PROMISE" At MusclePharm, we promise to develop and bring to market the safest, <u>most effective and rigorously tested nutritional and sports supplementation products possible</u>.

40. As explained below, however, MusclePharm's "promise" is a lie, and its competition is unfair. MusclePharm makes blatantly false and unfounded claims regarding its ingredients and its products.

41. MusclePharm's false advertising is willful, and its false statements have caused ThermoLife competitive injury. Any profits that MusclePharm earned as a result of its intentional false advertising are ill-gotten gains and must be disgorged.

## **MUSCLEPHARM'S FALSE ADVERTISING OF VASO6**

42. MusclePharm includes the ingredient VASO6 in at least two of its products. In its advertising for these products, MusclePharm indicates that it has independently tested the ingredients in the products and determined that the products use only "the safest" "most clinically tested" and "cutting edge ingredients." Contrary to MusclePharm's advertising statements, MusclePharm has not done any research or testing on VASO6; if it had, it would have discovered that this ingredient is just run-of-the mill green tea extract and does not provide any of the benefits MusclePharm falsely advertises and attributes to VASO6.

43. MusclePharm's pre-workout products Wreckage and Combat Pre-Workout both contain VASO6. Both products compete directly against products containing ThermoLife's patented ingredients and technologies, including creatine nitrate—the marquee ingredient in the world's top-selling pre-workout product, Cellucor's C4.

44. Highlighting the competition, MusclePharm touts Wreckage as "an elite pre-workout formula designed for our most experienced and seasoned athletes."

45. But MusclePharm is falsely marketing Wreckage and Combat Pre-Workout based on its claims about the ingredient VASO6.

46. A copy of the label for Wreckage appears below. VASO6 is the first "KEY FEATURE" listed on the product label and MusclePharm specifically touts "advanced vascularity and pump" as the benefit that VASO6 provides.



47. The description of Wreckage claims: "At the MusclePharm™ Sports Science Institute, our team fine-tuned precise inclusions of the safest, most clinically-studied and cutting-edge ingredients to enhance training performance and maximize playmaking ability."

48. A snapshot of the label for Combat Pre-Workout appears below. On the front of the label, and immediately below the product name, MusclePharm touts "MAXIMUM PUMP WITH VASO6."



49. MusclePharm has no support whatsoever for these statements about VASO6. Contrary to MusclePharm's advertising statements, MusclePharm has not investigated any of its advertising claims for VASO6.

50. A company named Compound Solutions, Inc. supplies and markets VASO6 as an ingredient for use in Dietary Supplements.

51. Until just recently, Compound Solutions claimed VASO6 practices U.S. Patent No 6,706,756. Compound Solutions removed this false marketing and false patent marking claim, along with other false advertising, from its own advertising for VASO6 after ThermoLife started investigating the VASO6 ingredient.

52. Even though VASO6 does not practice the '756 Patent, as Compound Solutions (the supplier of VASO6) tacitly acknowledges, MusclePharm has marked and still marks both Wreckage and Combat Pre-Workout as protected by U.S. Patent No. 6,706,756B1.

53. Claim 1 of the '756 Patent protects: "A method of inducing endothelium-dependent relaxation in blood vessels comprising the step of introducing isolated procyanidins having a preponderance of (-)-epicatechins." And Claim 5 of the '756 Patent protects the administration of "isolated epicatechin-(4-8)-epicatechin-(4-8)-epicatechin-gallate (C1-gallate)) (hereinafter, "C-1 gallate")" to cause the same effect.

9

54. Contrary to MusclePharm's false marking, VASO6 does not practice the '756 Patent.

55. The "isolated procyanidin c1-gallate" and "isolated procyanidins having a preponderance of (−)-epicatechins" discussed in the study and referenced in the '756 Patent, were obtained from "grape seed extracts."

56. VASO6 is not "grape seed extract" as MusclePharm's own product labels make clear, listing VASO6 on the Wreckage and Combat Pre-Workout product labels as "Green Tea Extract (leaf)."

57. Unlike the grape seed extract these patents are based on, a review of the available literature indicated that green tea extract does not contain the complex compounds found in grape seed extract (at least not in any remotely usable amount or "effective amount").

58. Unable to find any study that suggests that "isolated C1-gallate" or "isolated procyanidins having a preponderance of (-)-epicatechins" can be obtained from green tea extract, ThermoLife requested that a sample of VASO6 to be sent directly to an independent third-party laboratory for testing.

59. ThermoLife received the results of this testing on February 6, 2019.

60. Those independent laboratory test results confirmed that MusclePharm's advertising statements regarding VASO6 are false.

61. VASO6 is indistinguishable from a common green tea extract.

62.   A side-by-side comparison of VASO6 and a common green tea extract (costing $32 per kilo) was subjected to Compound Solutions' own testing assay for VASO6. The results appear below:

| | A | B | C | D | | A | B | C | D |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Description | Test Results | U/M | Reportable Compound | 1 | Description | Test Results | U/M | Reportable Compound |
| 2 | Vaso 6 | 1710 | ppm | Catechin Dimer Gallate | 2 | Green tea | 620 | ppm | Catechin Dimer Gallate |
| 3 | Vaso 6 | 13.8 | ppm | Catechin Trimer Gallate | 3 | Green tea | 4.92 | ppm | Catechin Trimer Gallate |
| 4 | Vaso 6 | 127000 | ppm | EGCG Dimer-1 | 4 | Green tea | 211000 | ppm | EGCG Dimer-1 |
| 5 | Vaso 6 | 223 | ppm | Catechin Trimer | 5 | Green tea | 286 | ppm | Catechin Trimer |
| 6 | Vaso 6 | 100 | ppm | EGCG Dimer-2 | 6 | Green tea | 120 | ppm | EGCG Dimer-2 |
| 7 | Vaso 6 | 4.8 | ppm | Catechin Tetramer | 7 | Green tea | 3.13 | ppm | Catechin Tetramer |
| 8 | Vaso 6 | 2620 | ppm | Catechin Dimer Digallate | 8 | Green tea | 1970 | ppm | Catechin Dimer Digallate |
| 9 | Vaso 6 | 435000 | ppm | ECG Dimer | 9 | Green tea | 302000 | ppm | ECG Dimer |
| 10 | Vaso 6 | 82.6 | ppm | Catechin Dimer | 10 | Green tea | ND | ppm | Catechin Dimer |
| 11 | Vaso 6 | 6490 | ppm | Catechin | 11 | Green tea | 6240 | ppm | Catechin |

63.   While there is some variance, there are minor differences in all green tea extracts, and here, independent laboratory testing has revealed that VASO6 is nothing more than a different brand of regular everyday common green tea extract.

64.   Critically, the laboratory that ThermoLife used to conduct the initial analysis on VASO6 is the same laboratory that Compound Solutions used to set the specifications for the testing assay on VASO6. This testing assay, tested for 10 different compounds found in green tea, but astonishingly none of the compounds tested were "isolated C1-gallate" or "isolated procyanidins having a preponderance of (-)-epicatechins" or "B2-di-gallate." The classification of compounds necessary to practice the '756 and '446 Patents.

65.   In sum, VASO6 is not grape seed extract, this is common green tea extract, and there is no evidence that VASO6 includes either of the isolated compounds necessary to practice the '756 Patent or "B2-di-gallate" in an "effective amount" to practice the '446 Patent. VASO6 cannot claim any of the theoretical attributes of a patented invention that relies on grape seed extract when the compounds necessary to practice the claims are not found in its green tea extract.

66. Moreover, even if MusclePharm's products contained the isolated and other compounds necessary to practice the inventions falsely listed on MusclePharm's products, the effects noted in the '756 and the '446 Patent were <u>observed in dead rat heart tissue in a Petri dish, not in humans.</u>

67. There is no known study on the effect of "isolated procyanidin c1-gallate" and "isolated procyanidins having a preponderance of (−)-epicatechins" or "B2-di-gallate" on human subjects.

68. Therefore, even if VASO6 did contain "isolated procyanidin c1-gallate" and "isolated procyanidins having a preponderance of (−)-epicatechins" or "B2-di-gallate" the effects these compounds on humans would be unknown.

69. Accordingly, MusclePharm's claim that VASO6 is one of its "fine-tuned precise inclusions of the safest, most clinically-studied" ingredients is a lie.

70. There are no clinical studies on humans showing that VASO6 has any of the effects MusclePharm attributes to it, or that MusclePharm includes an effective dose for the intended use as a vasodilator. In fact, what clinical data that does exist on the compounds actually found in VASO6 (epicatechin monomers) indicates that the compounds have no effect on blood flow at all, or actually cause vasoconstriction, not vasodilation; this is the exact opposite effect from what VASO6 is allegedly patented for, "clinically-studied" to do, and marketed to provide.

71. Furthermore, no clinic has ever evaluated the dosages of VASO6 used in MusclePharm's products to be equal to the effect of vasodilation effect of grape seed extract on dead rat heart tissue.

72. There are no available clinical studies demonstrating the effects of VASO6 exhibiting the advertised effects in humans.

73. MusclePharm also falsely advertises Wreckage as "clinically-studied" and dosed in "precise inclusions" to add the illusion of safety, validity, and efficacy.

74. There is no evidence supporting MusclePharm's claim that VASO6 is dosed in a "precise inclusions" or that it is "clinically-studied."

75. Put simply, MusclePharm's claims are lies and blatantly false.

76. By including the '756 Patent and the '446 Patent on the labels, MusclePharm blatantly falsely marked both Wreckage and Combat Pre-Workout.

77. MusclePharm's willfully false advertising and patent marking does not end here; MusclePharm has intentionally misled its customers by putting the VASO6 trademark on every single label for Wreckage and Combat Pre-Workout.

78. VASO6 is registered with the United States Patent and Trademark Office with Registration No. 5681256. This trademark registration lists the goods and services as: "Grape seed extracts in food, beverage and dietary supplements for increased athletic performance."[1]

79. But Wreckage and Combat Pre-Workout do not contain grape seed extract; instead, both of these products contain green tea extract. There is no grape seed extract in the product.

80. It is no coincidence that the patents listed on the Wreckage and Combat Pre-Workout labels relate to an invention that can be practiced using isolated compounds found in grape seed extract and the trademark listed on all of the products' labels also relates to grape seed extract. MusclePharm is intentionally misleading consumers to purchase the products based on these false claims, tricking consumers to believe that the products actually practice the patents they are marked with as a result of the inclusion of VASO6, which the trademark registration lists as grape seed extract (a material that might actually practice the patents).

81. MusclePharm knowingly and willfully used the VASO6 trademark on the Wreckage and Combat Pre-Workout products in commerce for goods and services that were not actually included in the products.

82. Furthermore, as a direct result of MusclePharm's intentional false advertising and false patent marking of these products, directly on the products' labels (which all include the VASO6 trademark for grape seed extract, a material that is not in the products),

---

[1] With its lies exposed, Compound Solutions, the trademark holder for VASO6, recently sought to amend the good and services description here to include green tea extract. This request was denied.

MusclePharm's Wreckage and Combat Pre-Workout products are all misbranded and illegal for sale as Dietary Supplements.

83. DSHEA, 21 U.S.C. § 343(a), states that a product is "misbranded" "if … its labeling is false or misleading in any particular."

84. As explained above, the Wreckage and Combat Pre-Workout labels include numerous false or misleading statements, including the inclusion of the VASO6 registered trademark that falsely describes the goods and patent numbers that the product cannot possibly practice.

85. Accordingly, Wreckage and Combat Pre-Workout are "misbranded."

86. 21 U.S.C. § 331(a) prohibits introduction in interstate commerce of any food, or drug, that is misbranded.

87. Because these products are misbranded, MusclePharm is prohibited from selling these products as dietary supplements in interstate commerce.

88. MusclePharm has willfully and intentionally deceived consumers by selling misbranded and prohibited products.

89. In sum, MusclePharm has willfully and intentionally deceived consumers by advertising VASO6 as practicing the '756 Patent and the '446 Patent and being supported by the research and invention that was awarded the '756 and '446 Patents.  In fact, MusclePharm intentionally lists a trademark on its products that includes VASO6, indicating that the products include grape seed extract (which could possibly practice the patents) when the products actually include green tea extract (which do not practice the patents). The entire market for VASO6 is based on lies. And with MusclePharm's products, those lies are repeated over-and-over again directly on the products' labels, rendering the products misbranded, under 21 U.S.C. § 343(a), and illegal for sale as Dietary Supplements, under 21 U.S.C. § 331(a). Furthermore, the VASO6 ingredient is not clinically tested and it certainly has not been shown to provide "maximum pump." MusclePharm's continued false marketing and false patent marking of VASO6 creates a market for this ingredient, where none should exist. In direct competition with

ThermoLife's ingredients and technologies, as well as, pre-workout products that license ThermoLife's ingredients and technologies, MusclePharm relies on lies to market its products and steal business from ThermoLife. Without this intentional false advertising, no one would ever buy products include VASO6 as a marquee ingredient, which is, for all intents and purposes, nothing more than a simple common green tea extract. MusclePharm ill-gotten gains must be disgorged.

## FIRST CLAIM FOR RELIEF

### (Lanham Act § 43(a))

90. Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as is fully set forth herein.

91. MusclePharm uses, offers for sale, and sells the product at issue in interstate and foreign commerce and has caused the false statements alleged herein to enter interstate and foreign commerce.

92. In connection with any goods or services, MusclePharm has used false designations of origin, false or misleading descriptions of fact, or false or misleading representations of fact in commercial advertising or promotion, and it misrepresents the nature, characteristics, qualities, or geographic origin of its or another person's goods, services, or commercial activities.

93. As alleged above, MusclePharm has made false statements of fact in commercial advertisements about the products sold on its website, including the false statements identified above.

94. MusclePharm's deception is material and made in bad faith for the purpose of influencing and deceiving the market, the public, consumers, potential customers and competitors. The deception is likely to influence the purchasing decisions of the public for whom it was intended and others.

95. ThermoLife has suffered a commercial injury to its reputation or sales, which was directly and proximately caused by MusclePharm's false statements and other acts as alleged above.

96. ThermoLife's injury is competitive, *i.e.*, harmful to ThermoLife's ability to compete in the Dietary Supplement market.

97. By reason of MusclePharm's statements and conduct, it has willfully violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and ThermoLife has suffered, and will continue to suffer damage to its business, reputation and good will and has lost sales and profits that ThermoLife would otherwise have made.

## SECOND CLAIM FOR RELIEF

### (Common Law Unfair Competition)

98. Plaintiff realleges and incorporates herein by reference each and every allegation of this Complaint as is fully set forth herein.

99. As alleged above, MusclePharm has made false statements of material fact in commercial advertisements about the products sold on its website, including, but not limited to, the false statements identified above.

100. Common law unfair competition prevents business conduct that is contrary to honest practice in commercial matters, including deception.

101. ThermoLife has been injured as a result of MusclePharm's false statements.

102. ThermoLife has suffered a commercial injury based upon a misrepresentation by MusclePharm.

103. ThermoLife's injury is competitive, *i.e.,* harmful to ThermoLife's ability to compete in the Dietary Supplement market.

104. As alleged above, ThermoLife's unfair competition claim does not seek to enforce the Federal Food Drug and Cosmetics Act and DSHEA through private action relating to the misbranding of food through false or misleading labeling.

105. ThermoLife has been irreparably harmed by MusclePharm's acts of unfair competition and it has suffered damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### False Marking – 35 U.S.C. § 292

106. Plaintiff realleges and incorporates by reference each and every allegation of this Complaint as if fully set forth herein.

107. Defendant knowingly and intentionally marked upon, affixed to, or used in advertising in connection with its Wreckage and Combat Pre-Workout products patent numbers that MusclePharm knows the product does not practice.

108. Each false marking by MusclePharm identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures ThermoLife and the public by stifling competition and increasing the costs of goods.

109. As a direct competitor of Defendant in the sale of products that contain patented ingredients and technology to increase vasodilation, ThermoLife has also suffered a competitive injury as a result of Defendant's violation of 35 U.S.C. § 292.

## JURY TRIAL DEMAND

110. Plaintiff requests a trial by jury on all aspects of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, ThermoLife demands judgment against Defendant MusclePharm as follows:

A. For an award disgorging any and all monies earned by MusclePharm in connection with the sale of the products identified above;

B. For an award of compensatory and/or restitutionary damages in favor of ThermoLife in an amount to be proven at trial;

C. For an award of treble damages under 15 U.S.C. §§ 1117, 1125(a);

D. For an award of ThermoLife's attorneys' fees and costs under 15 U.S.C. § 1117, A.R.S. § 13-2314.04, and any applicable law;

E. Finding that Defendant falsely marked its Combat Pre-Workout and Wreckage products in violation of 35 U.S.C. § 292;

F. For prejudgment interest on any liquidated sum determined to be due Plaintiff;

G. For post-judgment interest on any judgment;

H. For punitive damages in an amount sufficient to deter MusclePharm from future wrongful and outrageous conduct;

I. An Order permanently enjoining, MusclePharm and all those persons in active concert or participation with them, from making false statements on the internet about their products and an order requiring MusclePharm and those acting in concert or participation with them to remove the false statements from the internet regarding MusclePharm's products; and

J. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 16th day of April, 2019.

KERCSMAR & FELTUS PLLC


By: *s/Gregory Collins*
　　Gregory B. Collins
　　7150 East Camelback Road, Suite 285
　　Scottsdale, Arizona 85251

*Attorneys for ThermoLife International, LLC*