**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-19-02440-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| MusclePharm Corporation, | |
| Defendant. | |

Pending before the Court is MusclePharm Corporation's Motion to Dismiss Plaintiff ThermoLife International, LLC's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Doc. 23, "Mot."; Doc. 24, "Resp."; Doc. 25, "Reply"). Both parties requested oral argument, but the Court finds it unnecessary for resolving this motion. LRCiv 7.2(f). After accepting the amended complaint's well-pled allegations as true and considering the relevant law and submissions,[1] the motion will be granted.

**I.     BACKGROUND**

ThermoLife's litigation in this District is pervasive. As alleged: "This lawsuit is one of several that [it] has filed in this district against dietary supplement companies that are marketing and selling pre-workout and pump products that feature VASO6." (Doc. 20,

---

[1] In addition to its pleadings, MusclePharm submitted three orders dismissing complaints by ThermoLife as supplemental authority and requested that the Court take judicial notice of, without objection, one of ThermoLife's complaints against a different defendant in this District, which was filed a few months after the one here. (Docs. 26-29, 33.) The Court has considered these orders, one of which was written by this Court, and ThermoLife's other complaint under Federal Rule of Evidence 201. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1002 (9th Cir. 2018) (discussing judicial notice under Federal Rule of Evidence 201).

"FAC" ¶ 6.) The Arizona company, which felt it necessary to allege "[it] is not a patent troll,"[2] is a self-proclaimed "world leader in the use and development of nitrate technology in dietary supplements" with "at least 16 patents with more than 450 claims related to amino acid nitrate compounds, compositions, and their uses in dietary supplements and food products." (*Id.* ¶¶ 1, 3, 15, 26, 28.)

ThermoLife's claims arise out of lost sales allegedly stemming from the "massive false advertising campaign surrounding VASO6," which is apparently "nothing more [than] a common green tea extract," that is being used as an ingredient in "pre-workout and pump" dietary supplements. (*Id.* ¶¶ 6-7.) "While ThermoLife's patented ingredients remain extremely popular," and virtually "anytime an amino acid is combined with nitrate(s) and sold and marketed to consumers in a dietary supplement, that product relies on [ThermoLife's] patented technology," "[its] share of [the dietary supplement] market has been diluted as a result of the intentional false advertising and false marking of [the VASO6 ingredient]." (*Id.* ¶¶ 5, 29-30.) These products containing VASO6, like MusclePharm's "Wreckage" and "Combat Pre-Workout," sought by pre-workout and pump consumers alike, have been purchased over the past several years "instead of ThermoLife's patented ingredients and products that contain [its] patented ingredients," or "ThermoLife Component Products." (*Id.* ¶¶ 5, 7, 58-59.) In fact, even dietary supplement manufacturers like MusclePharm have replaced ThermoLife's ingredients with VASO6 in some of their products. (*Id.* ¶¶ 120-121.)

Since MusclePharm's Wreckage and Combat Pre-Workout products compete with other dietary supplements, some of which happen to "contain[] ThermoLife's patented ingredients and technology," the "[s]ales of MusclePharm's products . . . unquestionably harm ThermoLife's revenue and profits." (*Id.* ¶¶ 59, 8.) Indeed, "ThermoLife loses business every time a customer or potential customer chooses a VASO6 Component

---

[2] This is one of the many argumentative and distracting allegations that ThermoLife writes in its "short and plain statement of the claim showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Based on the alleged causes of action, the Court is entirely unconcerned with whether "MusclePharm and its attorney have repeatedly levied accusations of patent trolling at ThermoLife." (FAC ¶ 31.) The Court also finds unprofessional how ThermoLife characterizes one of MusclePharm's positions as "laughable." (Resp. at 17.)

Product, instead of a ThermoLife Component Product." (*Id.* ¶ 117.) Based on ThermoLife's "real and protectable interest in the market for dietary supplements," and MusclePharm's use of VASO6 instead of ThermoLife ingredients in some of its dietary supplements, ThermoLife brings claims of false advertising under the Lanham Act, 25 U.S.C. § 1125(d), false patent marking under 35 U.S.C. § 292, and common law unfair competition. (*Id.* ¶¶ 9, 53 126-145.) MusclePharm moves to dismiss each with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As a result, "[i]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests with the party asserting jurisdiction." *Id.* (internal and external citations omitted). Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011). Rule 12(b)(1) motions to dismiss "may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F.Supp.2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). For these motions, "unlike a motion under Rule 12(b)(6), the moving party may submit 'affidavits or any other evidence properly before the court.'" *Assoc. of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). If the moving party submits evidence showing a lack of subject matter jurisdiction, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair*, 880 F.2d at 201. But "[w]hen the motion to dismiss attacks the allegations of the complaint is insufficient[,]" like here, "all allegations of material fact are taken as true and construed in

the light most favorable to the nonmoving party." *Renteria*, 452 F.Supp.2d at 919 (citing *Fed'n of African Am. Contr. v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)).

In addition to moving to dismiss for lack of subject-matter jurisdiction, a party may move to dismiss for failure to state a claim under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). When evaluating a complaint under Rule 12(b)(6), well-pled factual allegations are presumed true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must meet Rule 8(a)(2)'s minimum requirements. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint setting forth a cognizable legal theory survives a motion to dismiss if it contains sufficient factual matter stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility only exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**III.   DISCUSSION**

"Because the issue of standing presents a 'threshold question of justiciability,' the Court will address the parties' Rule 12(b)(1) standing arguments first." *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2019 WL 3840988, at *1 (D. Ariz. Aug. 15, 2019); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (2011) ("[T]he district court should have undertaken an independent analysis of Article III

standing before determining standing under the Lanham Act."). Only if ThermoLife has standing to sue will the Court address the other arguments. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."); *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

### A. Lack of Subject Matter Jurisdiction

"Article III standing is a species of subject matter jurisdiction." *Carijano*, 643 F.3d at 1227. To have Article III standing, "a plaintiff must demonstrate (1) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615, 1618 (2020).

MusclePharm claims that ThermoLife lacks standing because "[it] has not alleged any injury proximately caused by the alleged false marking or advertising." (Mot. at 10-11; Reply at 2 ("ThermoLife . . . does not identify any specific lost sales or deals giving rise to a plausible inference that anything [MusclePharm] has done has caused ThermoLife injury.")). It further claims that ThermoLife's allegations concerning how its ingredient licensees offer "top-selling" pre-workout products undercut any reasonable inference ThermoLife was injured by MusclePharm's conduct. (Mot. at 11; Reply at 2.)

ThermoLife argues, in quoting 35 U.S.C. § 292(b), that it has standing because its amended complaint alleges a "competitive injury." (Resp. at 9; *id.* at 11 ("ThermoLife has pleaded a competitive injury. [Its] claims should move forward.")). Although relying on a federal statute in asserting constitutional standing misses the mark, ThermoLife's injury is summarized in its response:

> Obviously, MusclePharm's promotion of VASO6 and its sale of products that include VASO6, like its Combat Pre-Workout and Wreckage products has [*sic*] caused ThermoLife

- 5 -

> "competitive harm." Due to MusclePharm's false advertising and false claims, the consumer demand for VASO6 (in part, created by MusclePharm) has driven other dietary supplement companies to include VASO6 in their products, rather than include ThermoLife's ingredients. Moreover, as a direct result of MusclePharm's false advertising and false patent marking, consumers are misled into purchasing dietary supplements that include the falsely advertised and falsely marked VASO6, like MusclePharm's Wreckage and Combat Pre-Workout products, instead of purchasing products that include ThermoLife's patented ingredients (ThermoLife Component Products).

(*Id.* at 3-4.) And although ThermoLife's "ingredients and technology currently dominate the market in the pre-workout and pump category, 'anytime a company like MusclePharm falsely advertises the properties of an ingredient in a product marketed in the pump and/or pre-workout category, and [it] makes a sale based on that false advertising[,] [it] steals a potential sale from a ThermoLife Component Product [company]." (*Id.* at 9 (quoting FAC ¶ 52)). This "unquestionably harm[s] ThermoLife's revenue and profits" and is "directly attributable to the false advertising of products that compete directly against ThermoLife Component Products." (*Id.* (quoting FAC ¶¶ 8, 31)).

While the Court seriously questions whether ThermoLife's vaguely identified lost sales are in fact fairly traceable to MusclePharm's false advertising or marking of its products, its general allegations are enough for Article III purposes right now. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quotation marks and citation omitted)); *Steel Co.*, 523 U.S. 83, 104, (1998) ("[W]e must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations." (citation omitted)). Therefore, since ThermoLife has standing, the Court turns to the Rule 12(b)(6) arguments.

### B. Failure to State a Claim Under Rule 12(b)(6)

ThermoLife's false advertising, common law unfair competition, and false marking

claims are each premised on allegations that MusclePharm falsely advertised or marked its dietary supplements containing VASO6. (*See* FAC ¶¶ 9, 53 126-145.) MusclePharm moves to dismiss each for failure to state a claim.[3]

### 1. False Advertising Under the Lanham Act

One source of Lanham Act liability is false advertising. *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 122 (2014); 15 U.S.C. § 1125(a)(1)(B). These claims require alleging that:

> (1) The defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Bobbleheads.com v. Wright Bros., Inc.*, 259 F.Supp.3d 1087, 1096-97 (S.D. Cal. 2017) (quoting *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008)).

MusclePharm does not seriously challenge whether these elements are alleged. It instead argues that "ThermoLife's causes of action must be dismissed pursuant to Rule . . . 12(b)(6) for lack of *standing*." (Mot. at 10 (emphasis added)). The Court interprets this as MusclePharm challenging whether ThermoLife has statutory standing to bring its claim. *Lexmark*, 572 U.S. at 128. Thus, "[t]he question is whether the statute grants [ThermoLife] the cause of action that [it] asserts." *Bank of Am. Corp. v. City of Miami*, 137 S.Ct. 1296, 1302 (2017).

#### a. "Zone of Interests"

The Lanham Act's text "authorizes suit by 'any person who believes that he or she

---

[3] MusclePharm also specifically challenges ThermoLife's false marking claim under Federal Rule of Civil Procedure 9(b). (Mot. at 16-18.)

is likely to be damaged' by a defendant's false advertising." *Lexmark*, 572 U.S. at 129 (quoting 15 U.S.C. § 1125(a)(1)). But not everyone with Article III standing can bring a false advertising claim. *City of Oakland v. Lynch*, 798 F.3d 1159, 1164 (9th Cir. 2015). A false advertising plaintiff's alleged Article III injury must fall within the Lanham Act's "zone of interests." *See Lexmark*, 572 U.S. at 127-30. Congress clearly identified those interests in the Lanham Act, which states:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; *to protect persons engaged in such commerce against unfair competition*; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127 (emphasis added).

With this statutory text in mind, the Supreme Court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-32; *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) ("Competitors are within the class that may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by defendant's misrepresentations." (quoting *Lexmark*, 572 U.S. at 132). Noncompetitors fit in this class too. *Lexmark*, 572 U.S. at 136 ("To be sure, a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation. But a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in § 1127.").

Here, ThermoLife's alleged injury is inappropriately classified as one within the

Lanham Act's zone of interests. *Cf. id.* at 131-32. ThermoLife's "obvious," yet vaguely identified, persisting lost sales allegedly occurring because MusclePharm uses VASO6 instead of ThermoLife ingredients in its products barely identifies an injury, let alone one sufficiently alleged to be commercial in nature to be remedied by the Lanham Act. As an ingredient supplier, ThermoLife is only baldly alleged to compete against MusclePharm in its role as a manufacturer. But there are no specific factual allegations that permit a reasonable inference that these two companies offer similar products or even compete in similar consumer market segments. In fact, by ThermoLife's own allegations, the Arizona company merely supplies ingredients that are then incorporated into finished products with many other ingredients, which are in turn manufactured and sold by other companies like MusclePharm that offer dietary supplement products to consumers. To say ThermoLife has a remedy for its vaguely identified lost sales stemming from unalleged harm to its unidentified licensees implausibly defies the realities of business, and is certainly not actionable as an injury to a commercial interest in reputation or sales under the Lanham Act. *Iqbal*, 556 U.S. at 678. In fact, no "top-selling" licensee is even alleged to have been harmed. To the contrary, they are doing quite well. (FAC ¶¶ 29-30, 52.) Even accepting the allegations as true, such a vague injury falls outside the Lanham Act's zone of interests. *Cf. Lexmark*, 572 U.S. at 137. If it were enough, there would be no company whose conduct is not actionable under the Lanham Act in our interconnected modern economy.

The Court also finds ThermoLife's alleged injury outside the Lanham Act's zone of interests based on its failure to meaningfully show otherwise. *See United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1578-79 (2020) (explaining the court's responsibility to follow the principle of party presentation in "our adversarial system of adjudication"). ThermoLife's reasoning is straightforward, yet unconvincing:

> ThermoLife's falls within the "zone of interest [meant to be protected by the Lanham Act. . . [it] is entitled to a chance to prove its case."

(Resp. at 4 (citing *Lexmark*, 572 U.S. at 118)). Generally citing *Lexmark* and blankly arguing something falls within the "zone of interests" is not enough here, or in any case. Nor is alleging that an injury is competitive without supporting factual allegations show how ThermoLife's vague lost sales somehow inflicted by MusclePharm through ThermoLife's licensees enough. (*See id.* at 9-10.) ThermoLife's approach seemingly asks the Court to comb through the amended complaint and develop a theory for an injury, beyond blank allegations that there is one, that is directly attributable to MusclePharm's conduct and protected by the Lanham Act. That request is inappropriate. For these reasons, the Court finds that ThermoLife has failed to allege an injury within the Lanham Act's zone of interests. *Lexmark*, 572 U.S. at 137.

### b. Proximate Cause

Even if ThermoLife meaningfully argued a plausibly alleged injury within the Lanham Act's zone of interests, it would also have to allege that the injury was proximately caused by MusclePharm's conduct. *See id.* at 133. Proximate cause is different than "traceability" under Article III. *Id.* at 134 n.6. It addresses "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Bank of Am. Corp.*, 137 S.Ct. at 1305 (quoting *Lexmark*, 572 U.S. at 133). And "like any other element of a cause of action, it must be adequately alleged at the pleading stage in order for the case to proceed." *Lexmark*, 572 U.S. at 134 n.6. To show proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. This showing is "generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133-34.

Here, MusclePharm allegedly injured ThermoLife, again who "sells and licenses nitrate amino acid compositions, and nitrate amino acid compounds as dietary supplement ingredients for use in dietary supplements," by "falsely market[ing] VASO6 as a dietary supplement ingredient that is 'clinically proven' and 'patented' to increase vasodilation."

(Resp. at 9.) "VASO6," in turn, "directly competes with ThermoLife's nitrate amino acid compositions, and nitrate amino acid compounds." (*Id.* at 10.) "This false advertising and false marking," ThermoLife argues, "has caused *significant harm* to ThermoLife—[its] direct customers (dietary supplement companies) are using VASO6 . . . , instead of [its] patented, nitrate ingredients, and consumers are being misled to buy VASO6-based products instead of [its licensees' products]." (*Id.* (emphasis added)). MusclePharm claims that this inadequately alleges it proximately caused ThermoLife's injuries. (Mot. at 12-13; Reply at 6-8.) It argues, *inter alia*, that "ThermoLife erroneously claims that it is necessarily the case that any time a consumer purchases Combat or Wreckage it deprives ThermoLife of a sale." (Mot. at 12.) The Court agrees with MusclePharm that proximate cause is inadequately alleged.

Proximate cause "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 572 U.S. at 133. "That is ordinarily the case if the harm is purely derivative of 'misfortunes visited upon a third party by the defendant's act.'" *Id.* (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-269 (1992)). Proximate cause, in other words, is generally not satisfied "when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133-34. This is precisely how the Court sees ThermoLife's alleged injury. Its lost sales are allegedly caused by consumers purchasing dietary supplements, like those manufactured and sold by MusclePharm that contain VASO6 instead of ThermoLife ingredients. But this attenuated chain of chance events leading to ThermoLife's vaguely defined lost sales is difficult to follow. To be clear, the amended complaint describes no plausible instance "[w]here the injury alleged is so integral [to] an aspect of the [violation] alleged, there can be no question' that proximate cause is satisfied." *Id.* at 139 (quoting *Blue Shield of Va. V. McCready*, 457 U.S. 465, 479 (1982)).

To the contrary, ThermoLife's own allegations illustrate "'discontinuity' between the injury to the direct victim [(ThermoLife's licensees)] and the injury to the indirect victim [(ThermoLife)], so that the latter is not surely attributable to the former (and thus

- 11 -

also to the defendant's conduct), but might instead have resulted from 'any number of [other] reasons." *Id.* at 140 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006)). One of these many "other reasons" includes the ubiquitous and multi-faceted nature of dietary supplement consumer preferences. A pump or pre-workout consumer might choose to purchase MusclePharm products over ones containing ThermoLife ingredients for any number of reasons besides the fact that they contain VASO6—such as price, unavailability of other products, or even simply because MusclePharm's products taste better. There are no allegations plausibly connecting MusclePharm's conduct to ThermoLife's injury in such a way that these alternatives are less likely. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Common sense dictates that such an attenuated relationship between ThermoLife as an ingredient supplier and MusclePharm as a manufacturer, as alleged in ThermoLife's amended complaint, does not show ThermoLife's injuries were proximately caused by MusclePharm. Rather, the more immediate victim from MusclePharm's conduct, if any, is the dietary supplement manufacturer using ThermoLife's ingredients. If that manufacturer never licensed ThermoLife's ingredients, the injury alleged would not have materialized. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S, 639, 658 (2008).

Even further, ThermoLife also implausibly alleges "there is likely to be something very close to a 1:1 relationship between the number of [ThermoLife ingredients] sold (or not sold) by [ThermoLife] and the number of [products containing ThermoLife's ingredients] sold (or not sold) by [miscellaneous dietary supplements using ThermoLife technology]." *Lexmark*, 572 U.S. at 139. In other words, just because a consumer buys a product containing VASO6 does not plausibly mean ThermoLife necessarily lost an ingredient sale. Like the case within any market, product differentiation allows companies to diversify product offerings in an effort to attract different consumer segments. Because of this practical reality, ThermoLife's alleged proximate cause theory that every MusclePharm sale harmed it because each sale would have instead been one by a

ThermoLife licensee, and thus, "obviously" a sale by ThermoLife, is implausible. *Iqbal*, 556 U.S. at 678

Therefore, even if ThermoLife's injury was allegedly within the Lanham Act's zone of interests, it would still fail under Rule 12(b)(6) because it is inadequately alleged to have been proximately caused by MusclePharm's conduct. *Lexmark*, 572 U.S. at 140.

### 2. Common Law Unfair Competition

"In the Ninth Circuit, claims of unfair competition and false advertising under . . . common law are 'substantially congruent' to claims made under the Lanham Act." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1182 (N.D. Cal. 2007) (citing *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994)). ThermoLife does not specifically respond to MusclePharm's motion as it concerns this claim. Nonetheless, its common law unfair competition claim fails under Rule 12(b)(6) for the same reasons as the false advertising one under the Lanham Act. *See id.*

### 3. False Marking Under 35 U.S.C. § 292

Section 292(a) prohibits "mark[ing] upon . . . in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public." 35 U.S.C. § 292(a). This section authorizes suit to any "person who has suffered a *competitive injury* as a result of a violation of this section." 35 U.S.C. § 292(b) (emphasis added). Thus, without a "competitive injury," a plaintiff cannot bring a false marking claim. *See Sukumar v. Nautilus, Inc.* 785 F.3d 1396, 1399-1402 (Fed. Cir. 2015). A "competitive injury" is "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Id.* at 1400 (citation omitted). Additionally, a plaintiff's "competitive injury" must necessarily be caused by the defendant's violation of section 292(a). *Id.* at 1400 n.3.

While plaintiffs like MusclePharm must allege other elements to bring a false

marking claim,[4] the one challenged here is whether a competitive injury is alleged.[5] As thoroughly reasoned above, ThermoLife's injury is implausibly attributed to its attenuated "competitive" relationship with MusclePharm that runs through its licensees. The absence of any competitive injury proximately caused by MusclePharm's conduct is fatal to ThermoLife's false marking claim. *Sukumar*, 785 F.3d at 1402 ("[Section] 292 limits standing to entities that have 'suffered a competitive injury as a result of a violation of [section 292(a)].'").

## IV.   LEAVE TO AMEND

ThermoLife requests leave to amend over MusclePharm's assertion that the amended complaint should be dismissed without it. ThermoLife's request ignores Federal Rule of Civil Procedure 15 and Local Rule of Civil Procedure 15.1. It also fails to explain what it hopes to add in another amended complaint and does not include the proposed text of the second amended complaint as required by Local Rule 15.1.

Nevertheless, and in accordance with the well-settled law in this Circuit, because "it is not 'absolutely clear' that [ThermoLife] could not cure [the amended complaint's] deficiencies by amendment," the Court will give it an opportunity to do so. *See Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); Fed. R. Civ. P. 15(a)(2) ("leave to amend should be "freely" given "when justice so requires[]"). ThermoLife's amended complaint must address the deficiencies identified above and follow the form detailed in Local Rule 7.1.

Within thirty (30) days from the date of entry of this Order, ThermoLife may submit an amended complaint, which must be clearly designated that it is the "Second Amended Complaint." If ThermoLife decides to file an amended complaint, it is reminded that an amended complaint supersedes the original complaint, *see Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012), and it must be complete in itself and "not incorporate by reference

---

[4] For instance, a section 292 plaintiff must also allege (1) the existence of an unpatented article claiming to be patented and (2) a purpose to deceive the public. *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011).
[5] False marking claims must also satisfy Rule 9(b)'s heightened pleading standard. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011) ("This court holds that Rule 9(b)'s particularity requirement applies to false marking claims[.]").

any part of the preceding pleading, including exhibits," LRCiv 15.1.

## V. CONCLUSION

The Court dismisses ThermoLife's amended complaint in its entirety under Rule 12(b)(6) for the numerous shortcomings explained above. ThermoLife has thirty (30) days to amend its complaint or this case will be terminated with prejudice.

Accordingly,

**IT IS ORDERED GRANTING** MusclePharm Corporation's Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Points and Authorities in Support of Motion, (Doc. 23).

**IT IS FURTHER ORDERED** that ThermoLife may file a Second Amended Complaint within 30 days of the date of this Order. If a Second Amended Complaint is not filed within 30 days of the date of this Order, the Clerk of Court shall enter a judgment of dismissal with prejudice for the reasons stated herein.

Dated this 16th day of July, 2020.

Honorable Susan M. Brnovich
United States District Judge